COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges AtLee, Chaney and Frucci
Argued by  videoconference


PREMIER HOMES GROUP, LLC

MEMORANDUM OPINION* BY
v.        Record No. 2201-23-4               JUDGE VERNIDA R. CHANEY
                                             JUNE 10, 2025
PINNACLE FLOORING SOLUTIONS, LLC


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Carroll A. Weimer, Jr., Judge

Skyler R. Peacock (Mark R. Dycio; T. Wayne Biggs; Dycio &
Biggs, on briefs), for appellant.

Robert J. Zelnick (Collin Chayce Crookenden; Vanderpool,
Frostick & Nishanian, P.C., on brief), for appellee.


Premier Homes Group, LLC ("Premier") appeals the circuit court's order denying its

request for attorney fees after obtaining a $26,870.57 judgment against Pinnacle Flooring

Solutions, LLC ("Pinnacle") in their contract dispute litigation. Premier argues that the circuit

court erred in finding that Rule 3:25(b) barred its attorney fee claim. Pinnacle assigns cross-error

to the circuit court's rulings (1) finding that Pinnacle breached the contract, (2) allowing Premier

to orally amend its counterclaim on the last day of trial, and (3) admitting evidence on Premier's

new theory of damages. This Court finds that the trial court erred in denying Premier's request

for attorney fees under Rule 3:25(b), as Premier noted the basis for its request in the contract

attached to its counterclaim. Pinnacle's assignments of cross-error, however, are waived under

the voluntary-payment rule. For these reasons, we reverse the circuit court's judgment and

remand to the trial court for a determination of an award of attorney fees.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

In July 2021, Pinnacle sued Premier for breach of contract, alleging that Premier had not paid Pinnacle for its subcontracting work to install floors into three homes. Premier answered and counterclaimed, asserting that Pinnacle had breached the contract by performing subpar work, resulting in gapping in the flooring of the homes. In its answer, Premier requested that the circuit court "award [Premier] those attorney[] fees incurred by it in defending this matter." Premier's counterclaim also requested that the Court "further award it those attorney[] fees incurred by it in prosecuting this matter." Pinnacle's answer to the counterclaim asserted that Premier "fail[ed] to state a basis for an award of attorney[] fees, as required by Rule 3:25(B)."[2] In a separate filing submitted the same day, Pinnacle moved to strike Premier's attorney fee claim because Premier had failed "to identify the basis upon which it relies in requesting the attorneys' fees, as required by Rule 3:25(B)." The parties agreed to bifurcate the attorney fee claim from the underlying contract claim, and the circuit court entered an order reflecting the bifurcation.

Following a bench trial in February 2023, the circuit court dismissed Pinnacle's contract claim and awarded Premier a $26,870.57 judgment on its counterclaim. The circuit court continued the case to address attorney fees. Pinnacle again argued that neither Premier's answer nor its counterclaim identified any basis to support an attorney fee award, so Rule 3:25(c) precluded Premier's request.

---

[1] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the prevailing party at trial." *Norfolk S. Ry. Co. v. Sumner*, 297 Va. 35, 37 (2019).

[2] "A party seeking to recover attorney fees must include a demand . . . in a . . . counterclaim. . . . The demand must identify the basis upon which the party relies in requesting attorney fees." Rule 3:25(b). "The failure of a party to file a demand as required by this rule constitutes a waiver by the party of the claim for attorney fees, unless leave to file an amended pleading seeking attorney fees is granted under Rule 1:8." Rule 3:25(c).

Premier responded that the answer and counterclaim "incorporated by reference the contract providing the basis for recovering attorney[] fees." Premier also pointed to two emails it sent to Pinnacle's counsel. The first, sent in August 2021 in response to Pinnacle's answer, stated that the request "arises from the Contract attached to [Pinnacle's] Complaint, namely, paragraph 8(b),[3] to the degree you believe otherwise I am happy to discuss it with you. We can certainly craft an order to incorporate the clause or amend the counterclaim, I leave it in your court." Pinnacle's counsel did not reply to the email. Premier's counsel sent a second email in November 2022 that said: "Premier bases its claim for attorney[] fees on the language included in Section 8(b) of each subcontract agreement" and that "Premier intends to proceed with its claim for attorney[] fees and requests Pinnacle's consent to bifurcate the fees issue." Pinnacle's response agreed to bifurcate attorney fee claims but did not comment on the Rule 3:25(b) issue. Premier argued that its email disclosures, together with the contract incorporation, satisfied Rule 3:25(b).

The circuit court found that Premier's answer and counterclaim failed to state a basis for attorney fees as required by Rule 3:25(b) and dismissed Premier's attorney fee claim. Pinnacle then paid the $26,870.57 contract judgment. On appeal, Premier challenges the circuit court's holding that its attorney fee claim was waived under Rule 3:25(b). Pinnacle assigns cross-error to the circuit court's contract findings.

---

[3] Paragraph 8(b) states that, if Pinnacle defaults on the terms of this subcontract, and fails to correct the default, then Premier may terminate the subcontract, at which point "[Pinnacle] is liable for any amount by which the cost of completing [Pinnacle's] work (including reasonable overhead, profit, *and attorney fees*) exceeds any amounts owed or to be owed to [Pinnacle]." (Emphasis added).

ANALYSIS

I. Rule 3:25(b)

"A lower court's interpretation and application of the Rules of the Supreme Court . . . presents a question of law that we review de novo." *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 291 (2022) (alteration in original) (quoting *Cousett v. Commonwealth*, 71 Va. App. 49, 57 (2019)). "Rule 3:25 requires that '[a] party seeking to recover attorney fees must demand them in the complaint . . . , counterclaim . . . , third-party pleading . . . , or in a responsive pleading.'" *Id.* (alterations in original) (quoting Rule 3:25(b)). "The demand must identify the basis upon which the party relies in requesting attorney fees." *Id.* (quoting Rule 3:25(b)). A party's failure "to file a demand as required by this rule constitutes a waiver by the party of the claim for attorney fees, unless leave to file an amended pleading seeking attorney fees is granted under Rule 1:8." *Id.* (quoting Rule 3:25(c)).

"[T]he general rule in this Commonwealth is that in the absence of a statute or contract to the contrary, a court may not award attorney[] fees to the prevailing party." *Carlson v. Wells*, 281 Va. 173, 188 (2011) (quoting *Prospect Dev. Co. v. Bershader*, 258 Va. 75, 92 (1999)). Premier bases its claim for attorney fees on paragraph 8(b) of the contract, which states that, in the event Pinnacle defaults, "[Pinnacle] is liable for any amount by which the cost of completing [Pinnacle's] Work (including reasonable overhead, profit, *and attorney fees*) exceeds any amounts owed or to be owed to [Pinnacle]." (Emphasis added). Premier attached this contract to their answer to Pinnacle's breach of contract complaint and contends that the circuit court applied Rule 3:25(b) erroneously because the email disclosures and incorporation of the contract into the counterclaim put Pinnacle on notice of the basis of the attorney fee request. Premier requested that the lower court "rescind and thus terminate the subcontract with Plaintiff and award it damages in the amount of $72,226.07, and further respectfully requests that this Court find in further

- 4 -

award it those attorney[] fees incurred by it in prosecuting this matter." In support, Premier points to two Virginia precedents: *Online Resources Corp. v. Lawlor*, 285 Va. 40 (2013), and *Mintbrook*, 76 Va. App. 279.

In *Lawlor*, our Supreme Court upheld an attorney fee award where the complaint asserted a breach of contract, requested attorney fees, and attached the contract that served as the basis for the attorney fee request. 285 Va. at 62. This Court then applied that rule in *Mintbrook*, where a third party filed a complaint that stated its contract with the defendant "expressly provides that it will hold [the third party] harmless and indemnify them from claims such as the one now being asserted by" the plaintiff. *Mintbrook*, 76 Va. App. at 292. The complaint alleged an amount that the defendant was liable for, "plus interest, costs, and attorney[] fees." *Id.*

On review, the Court in *Mintbrook* found that it was "a close question whether the amended third-party complaint—viewed in isolation—adequately pleaded that the attorney fee claim was based on" the contract. *Id.* at 293. This Court noted that "[a] reasonable litigant" could have determined that there were three possible interpretations of the language: "the attorney-fee request was boilerplate; the fee request was based on the indemnification provision in the [contract]; or the fee request invoked the third-party-litigation exception to the general rule precluding the recovery of attorney fees." *Id.* Ultimately, this Court did not have to base its decision on the written language alone because "[a]t oral argument . . . [defendant's] counsel acknowledged, with commendable candor, that he knew that . . . the contract [was] the basis for attorney[] fees . . . ." *Id.* (last alteration in original). Counsel further acknowledged that he "was aware of that from the beginning." *Id.* This concession made it "unnecessary [for the Court] to decide whether the amended third-party complaint, standing alone, adequately pleaded [the attorney fees] claim." *Id.* at 293-94.

When Premier filed its answer to Pinnacle's complaint, it also included a counterclaim for breach of contract, asserting that Pinnacle's work on the flooring was "visibly defective,

poor[ly] construct[ed], incomplete, and below industry standards." As a result, Premier requested damages of $72,226.07, "and further request[ed] that the Court . . . award it those attorney[] fees incurred by it in prosecuting this matter." Included with this counterclaim, Premier attached the contracts, which included, under section 8(b), language that allowed Premier to, upon default by Pinnacle:

> [T]erminate the Subcontract, and all costs associated with completing the Subcontract Work, including reasonable overhead, profit, *and attorney fees*, will be deducted from any amounts owed to Subcontractor. Subcontractor is liable for any amount by which the cost of completing the Subcontractor's Work (including reasonable overhead, profit, *and attorney fees*) exceeds any amounts owed or to be owed to Subcontractor.

(Emphases added). Section 8(b) is the only relevant part of the contract that includes a statement that Premier may seek attorney fees upon default.[4]

Unlike *Mintbrook*, here, section 8(b) is the only basis within the contract from which Premier's claim could stem, stating that Pinnacle is "liable for any amount by which the cost of completing the Subcontractor's Work (including reasonable overhead, profit, *and attorney fees*) exceeds any amounts owed or to be owed to Subcontractor." (Emphasis added). When Premier attached this contract to the counterclaim, it identified the contract as the basis for its claims, including the request for attorney fees. *See Cal. Condo Ass'n v. Peterson*, 301 Va. 14, 22 (2022) (allowing the declaration for the Condominium Association to be considered when it was attached to the Association's amended complaint); Rule 1:4(i) ("The mention in a pleading of an accompanying exhibit, of itself and without more, makes such exhibit a part of the pleading."). And unlike in *Mintbrook*, in this case there is little ambiguity as to from where in the contract

---

[4] The contract includes an indemnification provision which states that, in event of a third-party claim, Pinnacle "shall defend, indemnify, and hold harmless Premier . . . from any and all claims, damages, losses, and liabilities, including reasonable attorney fees and costs . . . ." However, this section does not apply as there is no third-party action in this claim.

Premier is deriving its attorney fees claim. A reasonable litigant would know of the attorney fees request from the counterclaim and recognize that the contract attached has only one ground for a claim of attorney fees. Therefore, there is no uncertainty as to what Premier is requesting and on what they are basing this request. Premier satisfies the first sentence of Rule 3:25(b) by stating a claim for attorney fees in its counterclaim and satisfies the second sentence of Rule 3:25(b) by attaching the contract as the basis for claiming fees, which put Pinnacle on notice as to the basis of Premier's request for attorney fees.

For these reasons, the circuit court erred in finding Premier's attorney fees request waived under Rule 3:25. This Court therefore reverses the judgment of the circuit court and remands for a determination of attorney fees.

## II. Voluntary Payment Rule

In its assignments of cross-error, Pinnacle argues that the circuit court erred by admitting evidence over its objection, finding that Pinnacle had breached the contract, and awarding Premier damages. Pinnacle asks this Court to "reverse the judgment entered against Pinnacle in the amount of $26,870.57 and enter judgment in favor of Pinnacle on the counterclaim filed by Premier."

"In Virginia, [appellate courts] have drawn a bright line: 'Voluntary payment of a judgment deprives the payor of the right of appeal.'" *Sheehy v. Williams*, 299 Va. 274, 279 (2020) (quoting *Citizens Bank & Tr. Co. v. Crewe Factory Sales Corp.*, 254 Va. 355, 355 (1997)). In determining whether a party has waived a claim under the voluntary-payment rule, "[w]e will not disturb the trial court's findings of fact unless they are plainly wrong or without evidence to support them, but we will review de novo its conclusions of law." *D.R. Horton, Inc. v. Bd. of Supervisors for the Cnty. of Warren*, 285 Va. 467, 472 (2013) (citing *City of Richmond v. SunTrust Bank*, 283 Va. 439, 442 (2012)).

In a written filing to this Court, Pinnacle concedes that it paid the contract judgment. In its opposition to a motion to dismiss filed by Premier, Pinnacle notes that "[i]t is undisputed that Pinnacle submitted a check in the full amount of the judgment on December 1, 2023, and . . . Premier deposited the check on December 6, 2023." Pinnacle does not allege that its payment was involuntary. In fact, Pinnacle asserts that it is not requesting return of the money and that the rule should not apply to its assignments of cross-error.

After a bench trial, the circuit court concluded that Pinnacle failed to establish that Premier breached the contract and that Pinnacle breached instead. At the close of all litigation, Pinnacle paid the contract judgment to Premier. Thus, Pinnacle's payment of the judgment "deprives [it] of the right of appeal." *Sheehy*, 299 Va. at 279 (quoting *Citizens Bank & Tr. Co.*, 254 Va. at 355).[5] There is no precedent to support the proposition that crossclaims are immune from the bright line voluntary payment rule, and Pinnacle makes no such argument. Put simply, "the voluntary-payment doctrine recognizes that at some point, reviewing courts should declare litigation to be at an end when the litigants themselves—by their own voluntary actions—have effectively ended it." *Id.* By paying the contract judgment, Pinnacle "effectively ended" the contract dispute, and we will not reopen it on appeal. *Id.*

CONCLUSION

For the above reasons, this Court finds that the circuit court erred in finding that Premier's claim for attorney fees was waived under Rule 3:25(b) and (c) and reverses and remands for a determination of an attorney fees award. This Court finds no error related to

---

[5] Pinnacle also argues that Premier's acceptance of that payment deprived it of its right to appeal the attorney fee dispute. But voluntary payment deprives specifically the "payor," not the "payee," of the right to appeal. *Sheehy*, 299 Va. at 279 (quoting *Citizens Bank & Tr. Co.*, 254 Va. at 355).

Pinnacle's assignments of cross-error, as Pinnacle waived their right to appeal after voluntarily paying the contract judgment.

*Reversed and remanded.*